UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SABRE INDUSTRIES, INC. | CIVIL ACTION NO. 15-2501 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MODULE X SOLUTIONS, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 97) filed by Plaintiff and Counter-Defendant Sabre Industries, Inc. ("Sabre"). Sabre seeks entry of summary judgment dismissing Count XI of Defendants' Amended Counterclaim (Record Document 58), that is, Defendant Steven L. Schoonover's ("Schoonover") claim for intentional infliction of emotional distress. Defendants Module X Solutions, LLC ("MXS"), Schoonover, Jeff Hood, and Jim Dean and Counter-Plaintiff and Third Party Plaintiff MXS (collectively referred to as "Defendants") oppose the Motion for Summary Judgment. See Record Document 114. For the reasons set forth below, Sabre's Motion for Summary Judgment is **GRANTED** and Schoonover's claim for intentional infliction of emotional distress is **DISMISSED**.

**BACKGROUND**

On April 24, 2014, Sabre and MXS entered into a Joint Venture Agreement ("JV Agreement"). See Docket 58 at ¶ 196; see also Record Document 97-5 (JV Agreement). The JV Agreement contained various representations by both Sabre and MXS. See Record Document 97-1 at ¶ 2 (Statement of Undisputed Material Facts). Sabre terminated the JV Agreement on April 6, 2015. See id. at ¶ 3, citing Record Document 97-6 (Letter dated April 6, 2015).

After terminating the JV Agreement, Sabre initiated this lawsuit in October 2015 seeking to recover resulting damages. See id. at ¶ 4, citing Record Document 1. After being sued by Sabre, MXS filed a Counterclaim against Sabre. See id. at ¶ 4, citing Record Document 14. MXS subsequently amended its Counterclaim to include a Louisiana state law cause of action for intentional infliction of emotional distress. See Record Document 58 (Count XI) at ¶¶ 282-284. In Count XI, Schoonover alleges:

> Sabre knowingly and intentionally made the false statements referenced above to Schoonover in order to prevent him from competing with Sabre in the concrete shelter market, to induce him to continue to invest money into MXS and the JV Agreement even though . . . Sabre knew that Sabre intended to breach its obligations under the JV Agreement. . . . Sabre knew and intended that Schoonover would believe and rely on [the] false assurances and that his reliance would cause him severe and harmful emotional and financial distress - at a time when they knew that Schoonover was already under severe emotional distress due to his wife's serious illness and her comprehensive and lengthy necessary medical treatment. . . .
>
> . . . Sabre's false statements and allegation in this lawsuit . . . to the effect that Sabre was "extorted" by Schoonover into entering the JV Agreement, that MXS and Schoonover fraudulently induced Sabre to enter the JV Agreement and that Schoonover induced and caused MXS to breach the JV Agreement were also intended to and have caused Schoonover severe emotional distress.
>
> These intentional false statements made to Schooner during the term of the JV Agreement and in this lawsuit constitute extreme and outrageous conduct intended to cause him severe emotional distress and [Sabre is] therefore . . . liable to him for intentional infliction of emotional distress and for all damages arising from [its] statements and his resulting severe emotional distress.

Id.

In written interrogatory responses, Schoonover set forth a list of false statements and representations made by Sabre which he believes caused him severe emotional distress. See Record Document 97-7 at 3-4 (Answer to Interrogatory No. 3). These

statements and representations all related to the JV Agreement and included that Schoonover extorted Sabre into the JV Agreement; Schoonover solicited business from Sabre' customers in violation of the JV Agreement; Schoonover had no intention of making the JV Agreement work; and Schoonover intended to steal Sabre's customers and key employees and harm Sabre. See id. Schoonover alleges that these statements and representations caused him to suffer extreme emotional distress. See id. In his written interrogatory responses, Schoonover stated that he had consulted with Dr. William Lent ("Dr. Lent") about his distress and his inability to sleep. See id. (Answer to Interrogatory No. 11) at 7.

Sabre now moves for summary judgment as to Schoonover's intentional infliction of emotional distress claim. See Record Document 97. More specifically, Sabre argues that "Schoonover has no evidence to carry his burden of proving a claim for intentional infliction of emotional distress because he has no evidence he suffered severe emotional distress, has no evidence Sabre's conduct was extreme and outrageous, and has no evidence Sabre desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct." Record Document 97-2 at 1-2. Conversely, relying almost exclusively upon his own affidavit, Schoonover maintains that "Sabre's conduct was extreme, outrageous, and was intentionally inflicted upon [him]" and that he "suffered severe emotional distress as a result of Sabre's extreme, outrageous, and intentionally inflicted conduct." Record Document 114-1 at ¶¶ 1-2. Schoonover alleges that "Sabre management made jokes at the expense of [his] anxiety and emotional distress, which was heightened by calling him 'crazy.'" Id. at ¶ 3.

**LAW AND ANALYSIS**

I.  **Summary Judgment Standard.**

Rule 56(a) provides, in pertinent part:

Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728. "Rule 56 [(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

II.  **Intentional Infliction of Emotional Distress.**

"To recover for intentional infliction of emotional distress, a plaintiff must establish

(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to establish liability. Id. Individuals are "expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Id. Simply put, "the distress suffered must be such that no reasonable person could be expected to endure it." Id. at 1210. Liability will only attach when the mental suffering or anguish is "extreme." Id. Applying Louisiana state law, one Louisiana federal district court noted:

> A review of the Louisiana jurisprudence indicates that severe emotional distress may be found "where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock.

Pate v. Pontchartrain Partners, LLC, No. CIV.A. 13-6366, 2014 WL 5810521, at *4 (E.D. La. Nov. 7, 2014) (internal quotations omitted). Moreover, "the conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." White, 585 So.2d at 1210.

### III. Analysis.

The Court will focus on the first two elements of an intentional infliction of emotional

distress claim – that the conduct of the defendant was extreme and outrageous and that the plaintiffs' emotional distress was severe. See id. at 1209.

Sabre's Conduct Was Not Extreme and Outrageous

Schoonover maintains that whether conduct rises to the level of intentional infliction of emotional distress is a question for the finder of fact. See Record Document 114 at 3, citing Poff v. Oak Tree Mortg. Corp., No. CIV. A. 91-4347, 1993 WL 177206, at *3 (E.D. La. May 19, 1993). While in some instances this is true, this Court has routinely addressed intentional infliction of emotional distress claims at the summary judgment stage. See Weems v. Hodnett, No. 5:10-CV-1452, 2014 WL 1315987, at *6 (W.D. La. Mar. 31, 2014), aff'd, 597 F. App'x 257 (5th Cir. 2015); Thomas v. City of Shreveport, No. CIV.A. 06-1078, 2008 WL 4291211, at *12 (W.D. La. Sept. 15, 2008), aff'd sub nom. Thomas v. Kent, 401 F. App'x 864 (5th Cir. 2010).

Here, Schoonover points to the allegations in Count XI and his written interrogatory responses as evidence of his severe emotional distress. He also submitted an affidavit, stating:

> During this period of time my wife . . . was suffering from Breast Cancer . . . . Sabre management was well aware of her condition and knew that I had to be away from the plant for weeks attending to her post op. During these times, they took advantage of me by encouraging me to stay with her and not worry while they were undermining the JV and intentionally violating the agreement. In one instance, Tom Jagielski is texting me to take care of my wife and don't worry while at the same time violating the JV by keeping business meant for the JV and at the same time stopping the flow of information to MXS so we would not know what was going on.
>
> . . . During this time, I had high anxiety every day coupled with sleepless nights which Sabre Management made fun of in the e-mails to each other. They even called me crazy because of the way I was acting.

Record Document 114-2 at ¶¶ 6-7. In defining extreme and outrageous conduct, the

Louisiana Supreme Court has stated that the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." White, 585 So.2d at 1209.  Even assuming all of the aforementioned factual allegations to be true, Schoonover's allegations do not amount to conduct that goes beyond all possible bounds of decency and is utterly intolerable in a civilized community.  Rather, at most, the alleged statements and representation appear to fall in the category of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.

Schoonover's Emotional Distress Was Not Severe

In its motion, Sabre discussed Dr. Lent's medical records and the Independent Medical Examination ("IME") of Schoonover performed by clinical psychologist, Jennifer Russell, Ph.D. ("Dr. Russell").  See Record Document 97-2 at 7-8.  Dr. Lent's medical records do not reference any treatment for emotional distress. See Record Document 97-8 at ¶ 4.  The records do note that Schoonover suffers from sleep apnea; has used a CPAP since 1995; has responded well to sleep medication; and has been on sleep medication since January 2013.  See id.  After reviewing Schoonover's medical records and conducting the IME, including a written psychological test, Dr. Russell opined that Schoonover reported very little by way of psychological symptoms, and had no limitations in any major life functions.  See id. at ¶ 7.  She stated that Schoonover did not have any clinically significant mental disorders, and did not have any psychological symptoms that interfered with his functioning.  See id. at ¶ 8.  Dr. Russell further stated:

> With "severe" emotional distress being found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances, it is my opinion Mr. Schoonover

> did not suffer any severe emotional distress as a result of any actions or inactions by Sabre. Mr. Schoonover's level of functioning since the alleged incidents are wholly inconsistent with someone experiencing severe emotional distress. Any emotional distress experienced by Mr. Schoonover has been mild in degree and has also been impacted by stressors in his personal life, which are unrelated to any actions by Sabre.

Id. at ¶ 8.

In his affidavit, Schoonover stated that the violations of the JV Agreement caused "emotional and financial disaster" for him and his wife and that he had "high anxiety every day coupled with sleepless nights." Record Document 114-2 at ¶ 7. He also argues that the affidavit of Dr. Russell is not competent summary judgment evidence because it is conclusory and offers little explanation for her conclusions. See Record Document 114 at 5-6. He also questions her medical opinion because she only interviewed him once. See id. at 6. Yet, Schoonover's self-serving affidavit is insufficient to raise a genuine dispute of material fact. See Vais Arms, Inc. v. Vais, 383 F.3d 287, 294 (5th Cir.2004) (finding affiant's self-serving statements in his affidavit insufficient to raise a genuine issue of material fact); Celestine v. PNK (Lake Charles), LLC, No. CIV.A. 14-172, 2014 WL 2949412, at *2 (W.D. La. June 27, 2014). Schoonover has also failed to come forward with medical testimony or a medical diagnosis regarding his emotional distress to controvert the medical evidence presented by Sabre. Moreover, this Court finds that Dr. Russell's affidavit contains ample factual support for her medical opinions. The summary judgment record simply does not support that Schoonover's alleged emotional distress was severe. Therefore, applying these precepts of law to the facts of the instant case, this Court finds that Schoonover has failed to establish his right to recover for intentional infliction of emotional distress.

**CONCLUSION**

Based on the foregoing analysis, this Court holds that Schoonover has failed to meet his burden of proving a claim for intentional infliction of emotional distress because he has presented no evidence he suffered severe emotional distress and no evidence Sabre's conduct was extreme and outrageous. Accordingly, Sabre's Motion for Summary Judgment (Record Document 97) is **GRANTED** and Schoonover's claim for intentional infliction of emotional distress is **DISMISSED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 19th day of September, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE