SABRE INDUSTRIES, INC.                    CIVIL ACTION NO. 15-2501

VERSUS                                                   JUDGE S. MAURICE HICKS, JR.

MODULE X SOLUTIONS, LLC, ET AL.        MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 96) filed by Third Party Defendant Thomas Jagielski ("Jagielski"). Jagielski seeks entry of summary judgment dismissing Count VIII of Defendants' Amended Third Party Complaint (Record Document 58). More specifically, Jagielski seeks dismissal of Counter-Plaintiff and Third Party Plaintiff Module X Solutions, LLC's ("MXS") claim of tortious interference with a contract by a corporate officer. Defendants MXS, Steven L. Schoonover ("Schoonover"), Jeff Hood, and Jim Dean (collectively referred to as "Defendants") and Counter-Plaintiff and Third Party Plaintiff MXS oppose the Motion for Summary Judgment. See Record Document 109. For the reasons set forth below, Jagielski's Motion for Summary Judgment is **GRANTED** and MXS's claim of tortious interference with a contract by a corporate officer against Jagielski is **DISMISSED**.

## BACKGROUND

In Count VIII, MXS alleges that Jagielski tortiously interfered with the Joint Venture Agreement (the "JV Agreement") between MXS and Sabre Industries, Inc. ("Sabre") by causing Sabre to breach its obligation under the JV Agreement by "refusing to provide MXS with the required shelter orders . . . , and instead keeping this business for Sabre." Record Document 58 at ¶ 274. MXS maintains that "an officer of a corporation has a duty

not to interfere with that corporation's contractual relations." Id. MXS further alleges that Jagielski had full knowledge of the JV Agreement, yet abused his position of authority at Sabre and "tortiously interfered with the success of the JV Agreement." Id.

Jagielski was not involved with negotiating the JV Agreement between MXS and Sabre. See Record Document 96-1 at ¶ 1. At all times relevant to the allegations in Count VIII of Defendants' Amended Third Party Complaint (Record Document 58), Jagielski was employed at Sabre as the Vice-President and General Manager of Sabre's CellXion facility. See id. at ¶ 2. As Vice-President and General Manager, his duties included all the duties of a general manager, that is, he was in charge of what went on at Sabre's CellXion facility. See id. at ¶ 3. Part of his duties at Sabre included managing the volume of work orders, including shelter orders, and deciding what shelters to send to MXS and what shelters to keep at Sabre based on the volume that Sabre had at any given time. See id. at ¶ 4.

In support of his motion, Jagielski has submitted the declaration of Pete Sandore ("Sandore"), the CEO and President of Sabre. See Record Document 96-8. Sandore stated that he was CEO and President of Sabre at all time relevant to the allegations by MXS against Jagielski for tortious interference with a contract. See id. at ¶ 1. He further declared:

> When Jagielski was involved in making decisions of what shelters to send to MXS and what shelters to keep at Sabre while the . . . JV Agreement between Sabre and MXS was in effect, Jagielski was acting within the scope of his authority as the Vice-President and General Manager of Sabre's CellXion facility.

> When Jagielski was involved in making decisions of what shelters to send to MXS and what shelters to keep at Sabre while the JV Agreement was in effect, Jagielski was acting to benefit Sabre's interests. These decisions were based on the volume of orders at Sabre at that time.

Id. at ¶¶ 5-6.  Conversely, Defendants contend in their Statement of Disputed Material Facts that Jagielski acted knowingly contrary to the best interest of Sabre and intentionally induced or caused Sabre to breach the JV Agreement, without justification.  See Record Document 109-4.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard.**

Rule 56(a) provides, in pertinent part:

> Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728. "Rule 56 [(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could

not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## II.     Tortious Interference with a Contract By a Corporate Officer.

Louisiana recognizes "a very limited cause of action for tortious interference with contract." Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey, 183 F.3d 453, 457 (5th Cir. 1999).  In 9 to 5 Fashions, Inc. v. Spurney, 538 So. 2d 228 (La. 1989), the Louisiana Supreme Court explained:

> [A]n officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, ***unless the officer has reasonable justification for his conduct.***  The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.

Id. at 231 (emphasis added).  Therefore, an officer such as Jagielski "is privileged to induce the corporation to violate a contractual relation, or make its performance more burdensome, provided that [he] does not exceed the scope of his authority or knowingly commit acts that are adverse to the interests of his corporation." Id.

## III.    Analysis.

Defendants admit in their opposition that Jagielski was acting within his authority. See Record Document 109 at 5.  Yet, they maintain that there are genuine disputes of material fact as to whether Jagielski had a reasonable belief that his actions were for the benefit of Sabre.  See id. at 4 ("Whether Jagielski intentionally induced or caused Sabre to breach the JV Agreement and whether or not he had justification are questions of fact to be determined by the trier of fact.").  Based on Jagielski's deposition testimony,

Defendants argue that Jagielski knew litigation was not in Sabre's best interest and yet he allegedly caused Sabre to breach the JV Agreement which ultimately culminated in this lawsuit. See id. at 2-3.

As part of his motion, Jagielski has presented the declaration of Sandore, stating that "[w]hen Jagielski was involved in making decisions of what shelters to send to MXS and what shelters to keep at Sabre while the JV Agreement was in effect, Jagielski was acting to benefit Sabre's interests." Record Document 96-8 at ¶ 6. Sandore further stated that Jagielski's "decisions were based on the volume of orders at Sabre at that time." Id. Jagielski also points to Schoonover's written discovery responses and deposition testimony. In his discovery responses, Schoonover, the principal owner of MXS, admitted that two emails he drafted to Sandore were "the best evidence of [their] contents." Record Document 96-9 at 3-5. In the August 28, 2014 email to Sandore, Schoonover wrote:

> I know Tom [Jagielski] means us no harm but he is doing everything he can to protect his business for Sabre.

Id. at 10. In the November 19, 2014 email to Sandore, Schoonover wrote:

> Again I want to make the point that I like Tom and enjoy working with him. I understand he is only doing his job by making all the money he can and protecting the company.

Id. at 13. In his deposition, Schoonover stated that Jagielski "went on and basically did what was best for the company, Sabre." Record Document 96-5 at 4.

The Court holds that the mere possibility of a lawsuit for breach of the contractual relationship between Sabre and MXS is insufficient to satisfy MXS's burden of proof that Jagielski did not have a reasonable belief that his actions were for the benefit of Sabre. In his deposition, Jagielski stated that he knew a lawsuit was not a good business decision.

<u>See</u> Record Document 109-1 at 5.  Yet, this testimony was in the context of employment related claims, not breach of contract claims:

> A  I think it was more not to have a lawsuit.
>
> Q  And what - did Pete [Sandore] explain to you what lawsuit he was trying to avoid?
>
> A  Not entirely.
>
> Q  Just a lawsuit?
>
> A  It was - it was to avoid a lawsuit with Jim [Dean] and Jeff [Hood] and what they were complaining about in their employment.

Record Document 121-2 at 3-4.

Here, Jagielski has presented competent summary judgment evidence, including Sandore's declaration and admissions/concessions made by Schoonover in written discovery and deposition testimony.  This evidence demonstrates the absence of a genuine dispute of material fact as to Jagielski's reasonable belief that his actions were for the benefit of Sabre.  Defendants have come forward with insufficient evidence to controvert Jagielski's submissions and have failed to designate specific facts showing that there is a genuine dispute for trial.  Thus, MXS's claim of tortious interference with a contract by a corporate officer against Jagielski is hereby **DISMISSED**.

## CONCLUSION

Based on the foregoing analysis, this Court holds that MXS has failed to designate specific facts showing that there is a genuine issue for trial as to its claim of tortious interference with a contract by a corporate officer against Jagielski.  Accordingly, Jagielski's Motion for Summary Judgment (Record Document 96) is **GRANTED** and MXS's claim of

tortious interference with a contract by a corporate officer against Jagielski is **DISMISSED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 20th day of September, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE