**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| SABRE INDUSTRIES, INC. | CIVIL ACTION NO. 15-2501 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MODULE X SOLUTIONS, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment on Sabre Industries, Inc.'s Third Affirmative Defense (Impossibility) (Record Document 99) filed by Defendants Module X Solutions, LLC ("MXS"), Steven L. Schoonover, Jeff Hood, and Jim Dean ("Dean") and Counter-Plaintiff and Third Party Plaintiff MXS (collectively referred to as "Defendants"). Defendants seek an order summarily dismissing Plaintiff and Counter-Defendant Sabre Industries, Inc.'s ("Sabre") third affirmative defense of impossibility. Sabre opposes the Motion for Partial Summary Judgment. See Record Document 115. For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is **GRANTED** and the Court holds that the defense of impossibility under Louisiana Civil Code Article 1873 is unavailable to Sabre.

**BACKGROUND**

On April 24, 2014, Sabre and MXS entered into a Joint Venture Agreement (the "JV Agreement"), which provided:

> Sabre shall provide MXS with telecommunications and non-telecommunications work concerning, but not limited to, the manufacture of shelters, building systems and VPE Products as agreed upon between the parties, during the term of this Agreement. Reference Exhibit A for manufacturing volume parameters and commitments by product line and industry sector.

Record Document 99-3 at 1 (¶ 1). Exhibit A stated:

> 1. Sabre agrees to award an annual quantity of orders to MXS equal to three hundred (300) shelters. . . .
>
> . . .
>
> 9. Sabre agrees that a minimum of 50% of the shelter units awarded to MXS will be AT&T and/or Verizon units, and the intent, but not guarantee, is that the units awarded to MXS are a pro rata percentage of the various sizes and configurations of the orders received by Sabre. . . .

Id. at 4. The JV Agreement had an initial term of two years. See id. at 1 (¶ 3).

Sabre does not contest that it "did not award an annual quantity of orders to MXS equal to three hundred (300) shelters." Record Document 115-1 at ¶ I(5). MXS also contends that Sabre did not comply with the provision requiring that "a minimum of 50% of the shelter units . . . be AT&T and/or Verizon units." Record Document 99-2 at ¶ 5.

Shortly after the JV Agreement was signed, AT&T put a hold on the casting of all shelter orders until further notice. See Record Document 99-2 at ¶ 6; Record Document 115-1 at ¶ I(6). The AT&T production hold affected the volume of shelters Sabre had anticipated it would receive and could produce in 2014 . See id. Sabre and MXS initially believed that the AT&T production hold was temporary and that the orders would ultimately come back. See Record Document 99-2 at ¶ 7; Record Document 115-1 at ¶ I(7). At some point in December 2014, doubts arose as to whether the AT&T orders would resume. See id. After AT&T announced the production hold, Sabre made the decision to keep its concrete shelter orders for production at Sabre because Sabre needed the business. See Record Document 99-2 at ¶ 13; Record Document 115-1 at ¶ I(13).

It is undisputed that Sabre provided 119 shelter orders to MXS during the time the JV Agreement was in effect. See Record Document 99-2 at ¶ 10; Record Document 115-1

at ¶ I(10). Sabre produced 1345 concrete shelters in the two-year period following the signing of the JV Agreement (135 shelters for AT&T, 1068 shelters for Verizon and 142 shelters for other customers). See Record Document 99-2 at ¶ 11. Sabre produced 168 lightweight shelters in the two-year period following the signing of the JV Agreement (44 lightweight shelters for AT&T, 122 lightweight shelters for Verizon and 2 lightweight shelters for other customers). See id. at ¶ 12.

During the time the JV Agreement was in effect, Verizon advised Sabre it (Verizon) did not want MXS to work on Verizon shelters; First Solar advised Sabre it (First Solar) did not want MXS to work on First Solar shelters; and SMA advised Sabre it (SMA) did not want MXS to work on SMA solar skids. See Record Document 115-1 at ¶¶ II(1-3). Based on the AT&T production hold and the prohibitions/instructions from Verizon, SMA, and First Solar, Sabre contends it was impossible to award to MXS 600 shelters, 50% of which orders were from AT&T and Verizon.

## LAW AND ANALYSIS

**I.      Partial Summary Judgment Standard.**

Rule 56(a) provides, in pertinent part:

Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Quality Infusion Care, Inc., 628 F.3d at 728. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

II. **Defense of Impossibility.**

The Louisiana Civil Code provides that "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible." La. C.C. Art. 1873. Article 1875 defines a "fortuitous event" as "one that, at the time the contract was made, could not have been reasonably foreseen." La. C.C. Art. 1875. Louisiana courts have discussed fortuitous events as an "irresistible force" or "that which happens by a cause which we can not resist." Mark Investments, Inc. v. Motwane's Am.,

Inc., 483 So.2d 1187, 1189 (La. Ct. App. 1986). Louisiana jurisprudence also "uses the terms 'fortuitous event' and force majeure (irresistible force) interchangeably." Payne v. Hurwitz, 2007-0081 (La. App. 1 Cir. 1/16/08), 978 So.2d 1000, 1005. "Force majeure is defined as 'an event or effect that can be neither anticipated nor controlled.'" Id., citing Black's Law Dictionary 673-674 (8th ed. 2004). Fortuitous events and force majeure include "such acts of nature as floods and hurricanes" and "[i]t is essentially synonymous with the common law concept of 'act of God.'" Id., citing Saden v. Kirby, 94-0854 (La.9/5/95), 660 So.2d 423, 428; Bass v. Aetna Ins. Co., 370 So.2d 511, 513 n. 1 (La 1979); and A. Brousseau & Co. v. Ship Hudson, 11 La.Ann. 427 (La.1856).

To relieve an obligor of liability, a fortuitous event must also make the performance truly impossible. See La. C.C. Art. 1873. "The nonperformance of a contract is not excused by a fortuitous event where it may be carried into effect, although not in the manner contemplated by the obligor at the time the contract was entered into." Payne, 978 So.2d at 1005, citing Dallas Cooperage & Woodenware Co. v. Creston Hoop Co., 161 La. 1077, 1078-1079, 109 So. 844 (La.1926). Moreover, "an obligor is not released from his duty to perform under a contract by the mere fact that such performance has been made more difficult or more burdensome by a fortuitous event." Id., citing Schenck v. Capri Constr. Co., 194 So.2d 378, 380 (La.App. 4th Cir.1967).

**III.   Analysis.**

Sabre has raised the defense of impossibility. MXS has moved for partial summary judgment and argues, among other things, that there was no fortuitous event in this case. Thus, this Court must determine if the AT&T production hold and the prohibitions/instructions issued by Verizon, First Solar, and SMA constituted fortuitous

events, such that Sabre can assert the defense of impossibility under Article 1873.

Again, a "fortuitous event" is "one that, at the time the contract was made, could not have been reasonably foreseen." La. C.C. Art. 1875. Relying on deposition testimony, Sabre contends that it could not have foreseen the AT&T production hold or that Verizon, First Solar, and SMA would prevent Sabre from awarding their orders for shelters to MXS.[1] Yet, this deposition testimony only addresses the AT&T production hold and does not directly address reasonable foreseeability. More importantly, there is summary judgment evidence indicating that some of the "events" in questions were known to Sabre at the time the JV Agreement was executed. In his deposition, Pete Sandore ("Sandore"), CEO of Sabre, identified an email he received from Sabre manager Doug Huff on April 17, 2014 – one week before the JV Agreement was signed. See Record Document 120-1 at 2. The email stated that "Mark" with Verizon "was adamant that no VzW work would be done by the Louisiana JV." Record Document 120-2. Sandore admitted "there was talk of this, yes" and "this happened before the joint venture got signed." Record Document 120-1 at 2.

Additionally, Louisiana jurisprudence does not support Sabre's contention as a matter of law. Louisiana courts have defined fortuitous events as an "irresistible force" or "that which happens by a cause which we can not resist." Mark Investments, Inc., 483 So. 2d at 1189. In Payne, the court explained that "force majeure" is an event that can be neither anticipated nor controlled. Payne, 978 So.2d at 1005. Business down turns,

---

[1]Thomas Jagielski testified in his deposition that neither side anticipated the AT&T production hold. See Record Document 115-11 at 4. Pete Sandore testified that he had no inclination that there was going to be an AT&T production hold prior to the signing of the JV Agreement. See Record Document 115-6 at 9. Dean testified that he had no reason to believe, at the time the JV Agreement was signed, that there would be an AT&T production hold. See Record Document 115-3 at 4-5.

economic impracticability, and strategic business decisions can be anticipated and, to some extent, controlled. Such commercial/business related events and circumstances are not acts of nature such as floods and hurricanes and are in no way synonymous with an "act of God." Without a fortuitous event, there can be no impossibility under Article 1873. Sabre's impossibility defense is, therefore, disallowed.

## CONCLUSION

Based on the foregoing analysis, this Court finds Sabre has not met its burden in demonstrating a fortuitous event such that it may rely on the impossibility defense set forth in Article 1873. Accordingly, Defendants' Motion for Partial Summary Judgment on Sabre's Third Affirmative Defense (Impossibility) (Record Document 99) is **GRANTED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 22nd day of September, 2017.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE