**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| SABRE INDUSTRIES, INC. | CIVIL ACTION NO. 15-2501 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MODULE X SOLUTIONS, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is Plaintiff/Counter-Defendant Sabre Industries, Inc.'s ("Sabre") Motion in Limine No. 11 to Exclude Evidence by Defendants' Expert, Benjamin C. Woods, Regarding MXS's Purported Lost Revenues as a Measure of MXS's Claimed Damages. See Record Document 140. Defendants opposed the motion. See Record Document 160. At the September 26, 2017 pretrial conference, the Court asked for additional briefing on the proper measure of damages. See Record Document 171. Sabre and Defendants have now filed supplemental briefs. See Record Documents 176 & 179.

Sabre argues that lost profit, not lost revenue, is the proper measure of Defendants' claimed damages. See Record Document 140-1 at 4. In its supplemental brief, Sabre argued:

> Sabre recognizes that Woods will need to discuss [MXS's] alleged lost revenues in connection with Module X Solutions' claim for lost profits. Rather, the relief that Sabre seeks is much narrower than that characterized by defendants. Indeed, what Sabre seeks is only an Order precluding Woods (and defendants) from testifying that MXS's alleged lost revenues (as opposed to lost profits) is the appropriate measure of damages to apply to the claims of MXS.

Record Document 179 at 1-2. Sabre further notes that MXS has not cited a single code article or case in support of its position that MXS is entitled to recover both lost profits and lost revenues. See id. at 2.

Conversely, Defendants argue that lost revenues are among the many factors that a jury can consider in determining the appropriate award of damages under Louisiana

contract law. See Record Document 160 at 5. Defendants maintain that Sabre's bad faith breach of the JV Agreement entitles them to "the revenues MXS lost as a result of Sabre's failure to deliver the number of shelter orders required in the JV Agreement." Id. Defendants rely heavily upon Volentine v. Raeford Farms of Louisiana, LLC, 50,698 (La. App. 2 Cir. 8/15/16), 201 So.3d 325, *writ denied*, 2016-1924 (La. 12/16/16), 212 So.3d 1171, and *writ denied*, 2016-1925 (La. 12/16/16), 212 So.3d 1171, to support their position that lost revenues and expenses beyond lost profits are available to a victim of bad faith breach. See Record Document 176 at 3.

Louisiana Civil Code Article 1994 provides that "an obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance." "Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived." La. C.C. Art. 1995. "An obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made." La. C.C. Art. 1996. However, "an obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. C.C. Art. 1997.

The plaintiff in Volentine alleged breach of contract and violation of the Louisiana Unfair Trade Practices Act. See Volentine, 201 So.3d at 332. On appeal from a bench trial, the Louisiana appellate court affirmed the trial court's determination that defendant's abrupt termination of the contract was a bad faith breach. See id. at 348. The appellate court reviewed, among other things, the trial court's award for economic loss related to poultry operations, more specifically past and future "loss of farming income" Volentine, 201 So.3d at 336, 351. The Volentine court discussed the measure of damages for a bad

faith breach of contract and stated:

> The Contract encompassed the benefit to [plaintiff] of farming income, the loss of which, upon [defendant's] breach of the Contract, would cause the damage expected by the parties.

Id. at 349. It is true that the appellate court discussed "total loss of revenues" and "loss of farming income" in the context of damages; however, a close reading of the case establishes that the court relied upon the experts' profit projections and used lost profits as the measure of damages. Id. at 351-352. The court stated:

> Loss of profits must be proved with reasonable certainty and cannot be based on speculation or conjecture. Simpson v. Restructure Petroleum Mktg. Servs., Inc., 36,508 (La.App.2d Cir.10/23/02), 830 So.2d 480; Clark v. Ark–La–Tex Auction, Inc., 593 So.2d 870 (La.App. 2d Cir.1992), *writ denied*, 596 So.2d 210 (La.1992). Furthermore, a claim for lost profits cannot rest solely on the testimony of the injured party without being substantiated by other evidence. Simpson, *supra*.
>
> Here, we find no merit to Raeford's argument regarding Miller's qualifications. Miller was qualified as an expert forensic accountant and set forth his qualifications on the record. It was within the trial court's broad discretion to accept his qualifications as an expert in economic loss calculation, and we find no abuse of discretion in this ruling.

Id. at 352. Thus, the Court finds that MXS's reliance on Volentine is misplaced.

This Court holds that lost profits are the proper measure of damages and the jury will be so instructed. Even if the jury believes Sabre was in bad faith, lost profits – and not lost revenue – are the appropriate measure of damages. As set forth in Sabre's supplemental brief, awarding MXS damages for "avoidable costs," i.e., the direct labor and overhead for each shelter, would result in MXS being in a better position by not having manufactured a shelter than if MXS had actually manufactured the shelter. See Record Document 179 at 4-6. In its supplemental brief, Sabre gave the following example to illustrate its point:

> [MXS] concedes it received 119 orders for shelters, but contends that it should have received 481 more orders. Assume that [MXS] had received a 120th shelter order ("Shelter Order 120") and that this order was for a light weight shelter. According to Woods, [MXS] would have received revenue of $19,974.00 for Shelter Order 120, but would have expended $11,020.00 to perform the work associated with Shelter Order 120. Thus, according to Woods, [MXS] would have enjoyed a profit of $8,954.00 on Shelter Order 120. Notwithstanding the foregoing, [MXS] wants to argue to the jury that it is entitled as damages to the full amount of the $19,974.00 in revenue. Thus, under [MXS's] measure of damages, [MXS] is in a better position by not having manufactured Shelter Order 120 (*i.e.*, a damage award of $19,974.00), than if [MXS] had manufactured Shelter Order 120 (*i.e.*, a net profit of $8,954.00).

Record Document 179 at 4-5. As stated in Fifth Circuit Civil Pattern Jury Instruction No. 4.8, compensatory damages are intended to make the plaintiff whole, or to restore the plaintiff to the position it would have been in if there had been no breach of contract. Allowing the jury to use MXS's lost revenue damage calculation would place MXS in a better position and such recovery is not permitted under the law. Accordingly, Sabre's Motion in Limine No. 11 to Exclude Evidence by Defendants' Expert, Benjamin C. Woods, Regarding MXS's Purported Lost Revenues as a Measure of MXS's Claimed Damages (Record Document 140) is **GRANTED**.[1]

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 11th day of October, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[1]The instant ruling does not affect this Court's previous ruling which denied Sabre's Motion in Limine No. 13 to Exclude Evidence Regarding Costs MXS Allegedly Incurred to Improve Its Manufacturing Facility (Record Document 145). See Record Document 171 at 3.